Phillip S. SUNDERLAND and Phillip S. Sunderland, Administrator of the Estate of Helen Sunderland and Deborah S. Yarnell and John P. Sunderland and James P. Sunderland, Appellants

v.

R.A. BARLOW HOMEBUILDERS, a/k/a Barlow Homebuilders, Inc., a/k/a Barlow Construction, Inc., Robert A. Barlow, Sr., Individually and/or d/b/a R.A. Barlow Homebuilders, a/k/a Barlow Homebuilders, Inc. a/k/a Barlow Construction, Inc. and Robert A. Barlow, Jr., Tauder Ford, Inc. n/k/a John Kennedy Ford, Inc., John Kennedy Ford, Inc., Formerly Known as Tauder Ford, Inc., Glocker & Co., Inc. and Jerry DeLena, and Mars Construction, Appellees (Two Cases).

Superior Court of Pennsylvania.

Argued Sept. 26, 2001.
Filed Jan. 25, 2002.

Eugen M. Hamill, Philadelphia, for appellants.

Jeffery McDonnell, Philadelphia, for Tauder Ford, Inc., appellee.

Jancyjean P. Petro, Philadelphia, for Barlow, appellee.

Before: HUDOCK, STEVENS and OLSZEWSKI, JJ.

HUDOCK, J.

¶ 1 This is a consolidated interlocutory appeal as of right from two orders that granted preliminary objections alleging improper venue and transferred the underlying action from Philadelphia County to Montgomery County.[1] We affirm.

¶ 2 According to the complaint, on February 22, 2000, around 8 a.m., Helen Sunderland was driving a 1993 Ford Escort on Route 23 in Montgomery County, Pennsylvania. Robert A. Barlow, Jr. was driving in the opposite direction on the same road. Barlow allegedly lost control of his vehicle due to excessive speed and inattentiveness. The two vehicles collided.

¶ 3 Rescue personnel found Mrs. Sunderland initially non-responsive, but she later opened her eyes and was able to breathe on her own. She was transported by ambulance to a helicopter that flew her to the trauma center of the University of Pennsylvania Hospital in Philadelphia County. The victim died there approximately two hours after the accident. The Philadelphia Medical Examiner conducted an examination of Mrs. Sunderland's body.

¶ 4 Appellants, Philip S. Sunderland, in his own right and as administrator of his wife's estate, and Mrs. Sunderland's children, John P. Sunderland, Deborah S. Yarnell, and James P. Sunderland, commenced suit by a writ of summons in Philadelphia County against numerous defendants on May 8, 2000. Appellants asserted claims based on negligence and also commenced wrongful death and survival actions. Appellants subsequently filed their complaint on September 12, 2000, alleging that Robert Barlow, Jr. was acting in the course of his employment with Barlow Home Builders, Inc. when the accident occurred. Glocker & Co. Inc., Jerry DeLena and Mars Construction were sued on the basis of an alleged partnership with Barlow Home Builders, Inc. Appellants also named John Kennedy Ford, Inc., formerly known as Tauder Ford, the car dealership where Barlow's vehicle was purchased, as a defendant. John Kennedy Ford, Inc. was later dismissed from the case by stipulation of all the parties.

¶ 5 Appellants made no allegations of medical malpractice against the individuals who treated Mrs. Sunderland in Philadelphia County. According to the complaint, defendants Robert Barlow, Sr. and Robert Barlow, Jr. resided in Delaware County, the corporate defendants were located in and conducted business in Montgomery County, and Jerry DeLena resided or conducted business in Chester County. Appellants did not aver that any of the Appellees did business in Philadelphia County.

¶ 6 On October 3, 2000, Appellees Glocker & Company, Inc. and Jerry DeLena filed preliminary objections to Appellants' complaint challenging the appropriateness of venue in Philadelphia County and the sufficiency of the pleadings. On October 10, 2000, Appellees Robert Barlow, Sr. and Robert Barlow, Jr. also filed a motion to determine preliminary objections challenging the appropriateness of venue in Philadelphia County. On November 20, 2000, the trial court overruled the preliminary objections filed by Glocker & Company,

---

1. *See* Pa. R.A.P. 311(c) (change of venue in a civil action).

Inc. and Jerry DeLena challenging venue in Philadelphia County. However, on the next day, the motions judge sustained the Barlows' preliminary objections on venue and transferred the case against them to Montgomery County.

¶ 7 Appellants filed both a notice of appeal to this Court and a petition for reconsideration by the trial court on December 20, 2000. On January 5, 2001, the motions judge explicitly granted the petition to reconsider. The trial court then amended its November 20th order to sustain the preliminary objections to venue by Glocker & Company, Inc. and Jerry DeLena and also transferred the action against them to Montgomery County. Appellants filed a second notice of appeal on January 12, 2001.

¶ 8 In ruling on the preliminary objections, the motions judge stated that it was undisputed that none of the plaintiffs or defendants resided in or conducted business in Philadelphia County and that the accident occurred in Montgomery County. Trial Court Opinion, 3/28/01, at 5. The motions judge determined that the cause of action arose in Montgomery County and that it was also where "the transaction took place out of which the cause arose" because the tort occurred there. The motions judge found that the basis for the suit was the motor vehicle accident, which occurred in Montgomery County. *Id.* at 6. The motions judge concluded that the critical fact was the location where the tort occurred and that, under the circumstances of this case, the place of death was not relevant for the purpose of determining venue. The trial court, therefore, held that venue was improper in Philadelphia County.

■ ¶ 9 Appellants raise a single issue for our review:

Is the Philadelphia Court of Common Pleas the proper venue for a wrongful death and survival action brought on behalf of a person who died in Philadelphia County?

Appellants' Brief at 3. This issue was identified in Appellants' 1925(b) statement and, therefore, has not been waived pursuant to *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998). An order changing venue in a civil action is interlocutory but is appealable as of right. We conclude that this question is properly before us. Pa. R.A.P. 311(c).

■ ¶ 10 A trial court's ruling on venue will not be disturbed if the decision is reasonable in light of the facts. *Mathues v. Tim–Bar Corp.,* 438 Pa.Super. 231, 652 A.2d 349, 351 (1994). A decision to transfer venue will not be reversed unless the trial court abused its discretion. *Id.* A plaintiff's choice of forum is given great weight, and the burden is on the party challenging that choice to show it is improper. *Masel v. Glassman,* 456 Pa.Super. 41, 689 A.2d 314, 316 (1997).

¶ 11 If wrongful death and survival actions related to the same death are brought independently, they must be consolidated for trial. Pa.R.C.P. 213(e). Because neither the wrongful death nor the survival action statute addresses venue, the issue in this case must be determined under the general venue provisions found in Pennsylvania Rules of Civil Procedure 1006 and 2179. Rule 1006 states, in part:

[A]n action against an individual may be brought in and only in a county in which the individual may be served or in which the cause of action arose or where a transaction or occurrence took place out of which the cause of action arose or in any other county authorized by law.

Pa.R.C.P. 1006(a). Rule 2179 provides, in part, that venue is proper against a corporation in:

(1) the county where the registered office of principal place of business is located;

(2) a county where it regularly conducts business;

(3) the county where the cause of action arose; or

(4) a county where a transaction or occurrence took place out of which the cause of action arose.

Pa.R.C.P. 2179(a).

[5] ¶ 12 We first note that this is not a case involving a claim that venue should have been transferred because Philadelphia County was an inconvenient forum. "For the convenience of the parties and witnesses the court upon petition of any party may transfer an action to the appropriate court of any other county where the action could have been brought." Pa. R.C.P. 1006(d)(1). Appellees' arguments imply that Philadelphia County is an inconvenient forum. However, this issue is not before us. Appellees based their venue challenge in the trial court not on the contention that venue · in Philadelphia County is inconvenient under Rule 1006(d)(1), but that it is an improper forum in which to bring this cause of action. See Johnson v. Henkels & McCoy, Inc., 707 A.2d 237 (Pa.Super.1997) (a defendant in a personal injury action who did not allege in its petition, let alone prove, that venue in Philadelphia County would be oppressive and vexatious, did not demonstrate that it was entitled to change of venue based on forum non coveniens under Pa. R.C.P. 1006(d)(1)). Because this aspect of Appellees' argument was not presented to the trial court, we may not consider it for the first time on appeal. See Pa.R.A.P. 302(a) (issues not raised in lower court may not be raised for the first time on appeal).

¶ 13 It is necessary for us to determine whether, when a decedent is fatally injured in one county but dies in another, a wrongful death claim arises in the county of the initial tortious conduct or in the county of death. This appears to be an issue of first impression in Pennsylvania. Other states have dealt with this question in a variety of ways. In states where there is no specific statutory language governing venue in wrongful death cases, three approaches have emerged for determining where a cause of action for wrongful death arises or accrues for venue purposes. Schmidt v. Shearer, 26 Kan.App.2d 760, 995 P.2d 381, 389 (1999). The three categories depend upon whether the state bases venue in the county where the death occurred, in the county where the injury occurred, or recognizes proper venue in both the counties where the death and the injury occurred. Id. See also Venue of Wrongful Death Action, Diane Schmauder Kane, Annotation, 58 A.L.R. 5th 535, © 2001 (discussing venue in wrongful death suits in various states). Some states place venue in a wrongful death action at the site of the death. "[S]ince death is the critical and final element in the accrual of a wrongful death action, a wrongful death claim arises for venue purposes where the death occurs." Wentz v. Montana Power Company, 280 Mont. 14, 928 P.2d 237, 239 (1996). "A cause of action for wrongful death arises when death occurs. It seems reasonable to conclude that it arises where death occurs." Engel v. Gosper, 71 N.J.Super. 573, 177 A.2d 595, 598 (Law Div.1962) (citation omitted). See also Department of Transportation v. Evans, 269 Ga. 400, 499 S.E.2d 321 (1998) (under the Georgia statute placing venue where the "loss" occurred, venue in a wrongful death suit was proper in the county of death).

¶ 14 Courts in a second group of states have determined that venue is proper only at the site of the underlying tortious conduct that led to the death. With respect to venue in a wrongful death action, "the

cause of action 'accrues' at the place where the wrong complained of was committed. Although the statutory beneficiary may not have a cause of action until the decedent dies, the cause of action is not based on the death but on the wrongful causing of the death." *Dzur v. Gaertner*, 657 S.W.2d 35, 36 (Mo.App.1983) (citations omitted) (superceded by statute). *See also Gaboury v. Flagler Hospital, Inc.*, 316 So.2d 642 (Fla. 4th DCA 1975) (a wrongful death claim accrues and venue is proper in the county where the negligent acts which led to the death occurred because the gravamen of the Florida wrongful death statute is the underlying wrongful act); *Cottengim's Administrator v. Adams' Administratrix*, 255 S.W.2d 637, 638–39 (Ky.1953) (venue is proper at location of the fatal injury). A third group of states allows venue in either the place of death or the place of the initial tortious conduct. Venue "is proper, in a wrongful death action, where the decedent died, as well as in the county where the act(s) of negligence that caused the death occurred." *McMillan v. Puckett*, 678 So.2d 652, 656 (Miss.1996). *See also Schmidt v. Shearer*, 26 Kan.App.2d 760, 995 P.2d 381, 390 (1999) (venue in a wrongful death action under Kansas law is proper in either the place of the injury causing death or the place of death); *Bradbury v. St. Mary's Hospital of Kankakee*, 273 Ill. App.3d 555, 210 Ill.Dec. 252, 652 N.E.2d 1228, 1230 (1995) (under the Illinois statute allowing for venue "where the transaction or some part thereof occurred out of which the cause of action arose," venue is proper at the place of death in addition to the county where the negligence leading to the death occurred).

¶ 15 Before the promulgation of Rules 1006 and 2179, the Pennsylvania Supreme Court, in interpreting the wrongful death statute then in effect, was faced with a question somewhat analogous to the one before us. In *Centofanti v. Pennsylvania R. Co.*, 244 Pa. 255, 90 A. 558 (1914), the Court had to determine whether a widow whose husband was injured in an accident in Pennsylvania, but died in New Jersey, could bring suit for wrongful death in Pennsylvania based on the Pennsylvania statute. The defendant contended the widow was limited to bringing suit under the laws of New Jersey because the death occurred there. *Id.*, at 260, 90 A. at 560. It was therefore necessary for the Court to determine whether the widow's wrongful death claim arose in Pennsylvania, the place of the fatal injury, or in New Jersey, the location of her husband's death.

¶ 16 The Court noted that "[t]he Act of April 15, 1851, P.L. 669, of this state authorizes an action for damages when death is occasioned 'by unlawful violence or negligence,' and empowers the widow ... to bring the action." *Id.*, at 260, 90 A. at 560. The Court further stated that:

> This suit was brought under our statute, and the question arises: What, in such cases, is the cause of action for which the statute of this State authorizes the suit to be brought? Is it the death of the party, or is it the tort or wrongful act which results in his death? The solution of the question must necessarily be found in the proper interpretation of the statute which confers the right of action. Manifestly it is not the death of the party.

*Id.* at 261, 90 A. at 560. The Court determined that the wrongful death statute created "a new cause of action, unknown to the common law, when death shall be occasioned by 'unlawful violence or negligence' and no suit is brought by the injured in his lifetime." *Id.* The Court continued:

> We think it clear that the cause of action contemplated by the statute is the tort which produces death, and not the death

caused by the tort. It is true that the action will not lie unless death follows the wrongful act which occasions it, but death is not the tort but simply its consequence or result. The tort or wrongful act which our statute declares actionable is 'unlawful violence or negligence' causing or resulting in death. It is the tortious act or negligence of the wrongdoer, and not its consequence, that is the basis or ground of action which the statute authorizes to be brought.

*Id.*, at 262, 90 A. at 561. Our Supreme Court recently endorsed the continuing viability of the holding in *Centofanti*. *See Commonwealth v. Booth*, 564 Pa. 228, 237, 766 A.2d 843, 848 (2001).

¶ 17 In deciding the question before us, we consider the nature of a wrongful death action under current law. The Pennsylvania Wrongful Death Act reads in part:

(a) **General Rule.**—An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

42 Pa.C.S.A. § 8301(a). The language of section 8301 is substantially similar to that found in the Act of 1851, construed by the Court in *Centofanti*. Both statutes base the cause of action for wrongful death on "unlawful violence or negligence."

¶ 18 The purpose of our present Wrongful Death Act is to compensate certain enumerated relatives of the deceased for the pecuniary loss occasioned to them through deprivation of the part of the earnings of the deceased which they would have received from him had he lived.

*Hodge v. Loveland*, 456 Pa.Super. 188, 690 A.2d 243, 245–46 (1997). Thus, the action is not for damages sustained by the decedent, but for damages to his or her family caused by the death. *Id.*, at 246. The action does not compensate the decedent's estate. *Id.* The statute creates a right of action unknown to the common law, and we must construe it narrowly. *Id.*, at 249.

¶ 19 The statute of limitations for a wrongful death claim begins to run when a pecuniary loss is sustained by the beneficiaries of the person who has died due to the tort of another. *Baumgart v. Keene Building Products Corp.*, 430 Pa.Super. 162, 633 A.2d 1189, 1194 (1993), *aff'd by an equally divided court*, 542 Pa. 194, 666 A.2d 238 (1995). "This, invariably, is the date of death." *Id.* "Because death is not an event that is indefinite as to time of its occurrence, and because survivors are immediately put on notice that they may proceed to determine the cause of death, there is no basis to regard the cause of action for death as accruing at any time other than at death." *Moyer v. Rubright*, 438 Pa.Super. 154, 651 A.2d 1139, 1142 (1994) (citation omitted). An action for wrongful death must be brought within two years of the death. *Id.* However, if at the time of death a negligence action, based on the injuries that led to the death, would have been time barred, the wrongful death action is also time barred. *Id.* Additionally, while no comprehensive definition for the phrase "cause of action" has been formulated, Pennsylvania courts have defined it to mean the negligent act or omission, as opposed to the injury which flows from the tortious conduct, in cases involving claims based upon negligence. *Kuisis v. Baldwin–Lima–Hamilton Corp.*, 457 Pa. 321, 325–26 and n. 7, 319 A.2d 914, 918 and n. 7 (1974).

¶ 20 A wrongful death action is derivative of the injury which would have supported the decedent's own cause of ac-

tion and is dependent upon the decedent's cause of action being viable at the time of death. *Moyer*, at 1143. "As a general rule, no action for wrongful death can be maintained where the decedent, had he lived, could not himself have recovered for the injuries sustained." *Ingenito v. AC & S, Inc.*, 430 Pa.Super. 129, 633 A.2d 1172, 1176 (1993). Thus, although death is the necessary final event in a wrongful death claim, the cause of action is derivative of the underlying tortious acts that caused the fatal injury. *Id.* Considering the derivative nature of this cause of action, we conclude that a wrongful death claim arises in, and venue is proper in, the county in which a decedent was fatally injured, not the county of death.

¶ 21 Likewise, Appellants' survival action does not provide a basis for venue in Philadelphia County. In contrast to a wrongful death action, a survival action is not a new cause of action occasioned by the death of the decedent. *Baumgart*, 633 A.2d at 1191. Rather, it is a cause of action accruing to the plaintiff that survives his or her death. *Id.*

¶ 22 "All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants." 42 Pa.C.S.A. § 8302. The basis for the survival action in the present case is that, had she lived, Mrs. Sunderland could have sued to recover for her injuries resulting from the accident which occurred in Montgomery County. Appellants have presented no evidence that venue would have been proper in Philadelphia County if Helen Sunderland had survived and brought suit. There is no contact with Philadelphia County alleged other than the fact that the victim received medical treatment there. This alone would be an insufficient basis for venue if she had lived and brought suit, and we find that it is likewise an insufficient basis to allow for venue in Philadelphia County in the survival action.

¶ 23 We must also determine whether death qualifies as an "occurrence" that would support venue in Philadelphia County. The Rules allow venue where a transaction or occurrence took place giving rise to the cause of action. Pa.R.C.P. 1006(a); Pa.R.C.P. 2179(a)(4). Appellants contend that venue was proper in Philadelphia County, in part because decedent died there. They argue that it is, therefore, a county where an "occurrence" took place out of which the cause of action for wrongful death arose.

¶ 24 In their argument that no transaction or occurrence giving rise to the cause of action took place in Philadelphia County, Appellees cite a 1959 Pennsylvania Supreme Court case for its discussion of the terms "transaction" and "occurrence." *Craig v. W.J. Thiele & Sons, Inc.*, 395 Pa. 129, 149 A.2d 35 (1959). In *Craig*, the Court was faced with the question of whether the fact that the plaintiff placed an order for truck parts in Luzerne County was a sufficient basis for venue there in a breach of contract action. There was no allegation as to where the contract itself was made. The Court considered Pennsylvania Rule of Civil Procedure 2179 and discussed the provision in Illinois Code from which the rule was adapted.[2] The Court observed that while Pennsylvania Rule of Civil Procedure 2179 was modeled after the provision on venue in the Illinois Code, the language of the two rules differed. The Court noted:

> The Illinois Code provides venue may be in the county where "the transaction or some part thereof occurred".... It be-

2. Pa.R.C.P. 2179 was originally adopted November 26, 1943, and amended March 27, 1956, effective July 1, 1956. *Craig* was decided under the currently existing version of Rule 2179. *Craig*, at 133, 149 A.2d at 37.

comes significant, therefore, that while we adopted the rule from Illinois we deleted a part of that rule which authorized venue in any county wherein a "part of the transaction" occurred. The framers of our rule must have intended to require that a transaction (in this case the making of a contract) and not merely some part of the transaction, take place in the county where venue is laid. It would lead only to confusion and a practice which we have heretofore referred to as "forum shopping" if the law were to permit suit to be commenced against a corporation in any county where any facet of a complex transaction occurred.

Nor do we understand the word "occurrence" to mean "part of a transaction". On familiar principles of *ejusdem generis* the word "occurrence" would not have a broader meaning than "transaction" so as to conform it to "part of a transaction".

*Craig*, 395 Pa. at 133–34, 149 A.2d at 37.

¶ 25 Ultimately, the Court held that the complaint was not sufficiently clear to justify venue in Luzerne County and remanded the case, directing that the plaintiff amend the complaint to state more specifically the facts supporting venue. In *Craig*, the Supreme Court merely noted that parties cannot avoid the "transaction" requirement by characterizing "a part of a transaction" as an "occurrence." The question in the present case is not whether "a part of the transaction" took place in Philadelphia County, but, rather, whether decedent's death there was an "occurrence" giving rise to the cause of action. *Craig* does not address this issue. However, this Court recently cited *Craig* as a basis for interpreting the term "occurrence" narrowly when finding that certain events were not a sufficient basis, pursuant to the "transaction or occurrence" language of Rule 1006, to locate venue in Allegheny County in a case involving an alleged civil conspiracy. *Estate of Werner by Werner v. Werner*, 781 A.2d 188, 190–92 (Pa.Super.2001).

¶ 26 In the instant case, we have held that the Appellants' cause of action for wrongful death arose in Montgomery County, rather than Philadelphia County. We find that the "occurrences" giving rise to this cause of action are the events preceding and leading up to the fatal accident. All of these events occurred outside of Philadelphia County. In light of *Craig* and *Estate of Werner*, we believe it would be inconsistent with the narrow interpretation given to the term "occurrence" by courts in Pennsylvania to hold that venue is proper in Philadelphia County solely on the basis that Mrs. Sunderland's death there was an occurrence giving rise to a wrongful death cause of action that we have determined arose in Montgomery County.

¶ 27 Orders affirmed.