**[J-86-2022] [MO: Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| LINDA REIBENSTEIN, AS THE ADMINISTRATRIX OF THE ESTATE OF MARY ANN WHITMAN, DECEASED | : No. 32 MAP 2021 |
| | : |
| | : Appeal from the Order of the |
| | : Superior Court at No. 1624 MDA |
| | : 2019 dated July 30, 2020, |
| | : reconsideration denied October 5, |
| v. | : 2020, Vacating the Order of the |
| | : Lackawanna County Court of |
| | : Common Pleas, Civil Division, at |
| CHARLES BARAX, M.D.; AND MERCY HOSPITAL, SCRANTON | : No. 2016-01716 dated August 29, |
| _____ | : 2019 and Remanding. |
| | : |
| | : ARGUED:  October 26, 2021 |
| LINDA REIBENSTEIN, AS THE ADMINISTRATRIX OF THE ESTATE OF MARY ANN WHITMAN, DECEASED | : |
| | : RESUBMITTED: November 15, |
| | : 2022 |
| | : |
| | : |
| | : |
| v. | : |
| | : |
| | : |
| | : |
| PATRICK D. CONABOY, M.D.; AND COGNETTI & CONABOY FAMILY PRACTICE, P.C. | : |
| | : |
| | : |
| | : |
| | : |
| APPEAL OF: PATRICK D. CONABOY, M.D. AND COGNETTI & CONABOY FAMILY PRACTICE, P.C. | : |
| | : |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE DOUGHERTY**                                    **DECIDED:  December 12, 2022**

I fully join Justice Mundy's concurring and dissenting opinion.  I write separately to emphasize my disagreement with the majority's treatment of the fraudulent concealment doctrine in the context of wrongful death and survival actions.  *See* Majority Opinion at

16-20. The majority goes far out of its way to argue its reading of MCARE section 513(d)[1] comports with the pre-MCARE decision in *Pastierik v. Duquesne Light Co.*, 526 A.2d 323 (Pa. 1987). In doing so, the majority opinion erodes our well-established fraudulent concealment doctrine, potentially impacting cases outside the MCARE context.

In *Pastierik*, we held the discovery rule does not apply in death actions. *Id.* at 326. We explained the discovery rule typically applies to toll a statute of limitations in cases where "injuries are of a nature that they may be inflicted without immediate symptoms or immediately determinable causes," but that "causes of action for death must be regarded in a different light since they are not similarly shrouded by indefinite factors." *Id.* Thus, we held "[b]ecause death is a definitely ascertainable event, and survivors are put on notice that, if an action is to be brought, the cause of action must be determined through the extensive means available at the time of death, there is no basis to extend application of the discovery rule to permit the filing of survival actions, or wrongful death actions, at times beyond the specified statutory period." *Id.* at 327.

Relevant here, the *Pastierik* Court did not even mention the fraudulent concealment doctrine. Yet the majority employs circular logic to argue *Pastierik*'s limitation on the discovery rule in death cases somehow supports its narrow reading of the fraudulent concealment tolling provision in MCARE section 513(d). After explaining the holding as to the discovery rule in *Pastierik*, the majority acknowledges "[e]ven before MCARE's enactment," the principle that death serves as a signal event "was subject to an equitable exception." Majority Opinion at 17. The majority suggests that, "[t]hen

---

[1] Section 513(d) provides: "**(d) Death or survival actions.**--If the claim is brought under 42 Pa.C.S. § 8301 (relating to death action) or 8302 (relating to survival action), the action must be commenced within two years after the death in the absence of affirmative misrepresentation or fraudulent concealment of the cause of death." 40 P.S. §1303.513(d).

(under the common law) as now (under MCARE), where 'cause of death' was obscure to a potential plaintiff due to an act or omission, estoppel principles compelled tolling the two-year statute of limitations." *Id.* at 17-18. Relying only on *Pastierik* and 42 Pa.C.S. §5502,[2] neither of which discusses the fraudulent concealment doctrine and its limited relevance in death cases, the majority claims "the tolling remedy for death claims was more limited than the broader discovery rule for precisely the same reason—death invites immediate investigation." *Id.* at 18.

The majority then purports to recognize "the discovery rule and equitable tolling[3] are conceptually distinct." *Id.* But the majority simply asserts "[t]hat distinction . . . lacks a difference when it comes to the concerns implicated by the question that this case presents." *Id.* And, even more perplexing, the majority focuses on the discovery rule alone to explain the supposed lack of a difference between the discovery rule and other concepts of equitable tolling (*i.e.*, the fraudulent concealment exception in section 513(d)).

---

[2] Section 5502 simply provides:

> **(a) General rule.**--The time within which a matter must be commenced under this chapter shall be computed, except as otherwise provided by subsection (b) or by any other provision of this chapter, from the time the cause of action accrued, the criminal offense was committed or the right of appeal arose.
>
> **(b) Implementing court rules.**--Subsection (a) may be made more specifically applicable to particular classes of matters by general rules defining the acts, omissions or events from which the limitation shall be computed. Rules adopted pursuant to this section shall take effect only in the manner provided by section 503(b) (relating to procedures).

42 Pa.C.S. §5502.

[3] Confusingly, the majority seems to use the phrase "equitable tolling" to describe the fraudulent concealment tolling exception in section 513(d). Majority Opinion at 18. As explained in *Rice v. Diocese of Altoona-Johnstown*, "[e]quitable tolling" is an "umbrella" concept, and both the discovery rule and fraudulent concealment "fall under that umbrella." 255 A.3d 237, 248 n.3 (Pa. 2021) (internal quotation and citation omitted).

*See id.* ("The **discovery rule** begins to run upon the discovery of the injury and the prospect that it was caused by malpractice . . . . But once the claim accrues, the clock ticks inexorably . . . .") (emphasis added); *id.* at 19 ("In death actions, death itself is the watershed event, analogous to satisfying the discovery-of-injury and tortious-causation requirements **relative to the discovery rule**.") (emphasis added); *id.* ("The fact remains, though, that the triggering event for the **discovery rule** is the discovery of injury and the prospect that it was caused by malpractice itself, not the certain discovery of all responsible parties.") (emphasis added).

The majority describes these discovery rule principles correctly, but the discovery rule is not at issue in this case. Section 513(d) does not allow for tolling pursuant to the discovery rule (likely due to the fact the discovery rule does not apply in death cases).[4] But section 513(d) does provide for tolling where there has been an "affirmative misrepresentation or fraudulent concealment of the cause of death." 40 P.S. §1303.513(d). Our precedent is crystal clear that the discovery rule and the fraudulent concealment doctrine are related but distinct theories that operate differently.

We recently articulated this distinction in *Rice v. Diocese of Altoona-Johnstown*, where we explained the discovery rule "tolls the statute of limitations when an injury or its cause is not reasonably knowable." 255 A.3d 237, 247 (Pa. 2021) (internal quotation omitted). We elaborated how "[t]he purpose of this rule is clear: to ensure that persons who are reasonably **unaware of an injury** that is not immediately ascertainable have

---

[4] Indeed, in *Matharu v. Muir*, then-Judge, now-Justice Donohue noted section 513(d) "does not provide that the discovery rule may toll its two-year time limitation." 86 A.3d 250, 264 (Pa. Super. 2014) (*en banc*). *Matharu* cogently explains the difference between the fraudulent concealment doctrine and the discovery rule in the context of death cases: "while a fraudulent misrepresentation or concealment will toll the two-year statute of limitations, the discovery rule (applicable to other negligence actions) has no application in death claims since death is a 'definitely established event' and puts survivors on immediate notice to determine if any negligence occurred." *Id.* at 263-64 (citing *Pastierik*, 526 A.2d at 326).

essentially the same rights as those who suffer an immediately ascertainable injury." *Id.* (internal quotation omitted) (emphasis added). We further explained that in *Wilson v. El-Daief*, 964 A.2d 354 (Pa. 2009), we adopted a strict inquiry-notice approach to the discovery rule that "'t[ies] commencement of the limitations period to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause.'" *Rice*, 255 A.3d at 247, *quoting Wilson*, 964 A.2d at 364 (alteration in original).

On the other hand, the purpose of the fraudulent concealment doctrine "is rooted in the recognition that fraud can prevent a plaintiff from even knowing that he or she has been defrauded. Effectively, the distinction is that where fraud has prevented the plaintiff from knowing of his or her cause of action, that cause of action simply does not even exist until the plaintiff becomes aware of, *i.e.,* 'discovers,' the fraud." *Id.* at 248. We again described the operation of the fraudulent concealment doctrine as articulated by the Court in *Molineux v. Reed*, 532 A.2d 792 (Pa. 1987): "[w]here, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations." *Rice,* 255 A.3d at 248, *quoting Molineux*, 532 A.2d at 794 (internal quotation omitted).

A full appreciation of the differences between the two doctrines reveals why the inquiry notice arising from death for purposes of the discovery rule cannot simply be grafted onto the fraudulent concealment doctrine. As the majority recognizes, *Pastierik* held the discovery rule does not apply in wrongful death and survival actions because death is a "definitely established event" that puts plaintiffs on inquiry notice of the injury, and a reasonably diligent plaintiff would be prompted to investigate potential claims. *Pastierik*, 526 A.2d at 325-26; *see also* Majority Opinion at 16-17. But as explained in

*Rice* and *Molineux*, unlike the discovery rule, the fraudulent concealment doctrine is not necessarily concerned with situations where plaintiffs do not know they are injured in the first place. Instead, the fraudulent concealment doctrine comes into play where "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry [into the facts]." *Molineux*, 532 A.2d at 794; *Rice*, 255 A.3d at 248; *see also, e.g.*, *Fine v. Checcio*, 870 A.2d 850, 860, 863 (Pa. 2005).

The fraudulent concealment doctrine allows for tolling in situations where a plaintiff may already be on notice of the injury, *e.g.*, a death, and poised to investigate potential claims, but is led astray by the defendant's fraud or concealment. In fact, plaintiffs are required to exercise reasonable diligence in the investigation of their claims to avail themselves of the doctrine's tolling. *See Fine*, 870 A.2d at 861 (requiring plaintiffs' exercise of reasonable diligence to investigate causes of injury in order to benefit from tolling due to fraudulent concealment; thus, "a statute of limitations that is tolled by virtue of fraudulent concealment begins to run when the injured party knows **or reasonably should know** of his injury and its cause") (emphasis added). Obviously, in a death case, while the death itself puts the plaintiff on notice of the injury and triggers the duty to investigate with reasonable diligence, a misrepresentation or fraudulent concealment can, during such investigation, cause the plaintiff to "relax his vigilance or deviate from his right of inquiry." *Molineux*, 532 A.2d at 794 (internal quotation omitted).

Thus, *Pastierik*'s logic that death puts survivors on notice of the decedent's injury does not preclude application of the fraudulent concealment doctrine where the plaintiff was reasonably diligent in investigating her potential claims after the death. And as applied to section 513(d), if a defendant medical provider were to fraudulently conceal conduct that caused the decedent's death, such concealment could induce the plaintiff to "relax h[er] vigilance" even after she has begun her investigation in earnest. *Id.* As

Justice Mundy explains wisely, "[l]imiting the equitable tolling of the statute of limitations based on a defendant's fraudulent concealment or affirmative misrepresentation to only those cases in which a defendant conceals the medical cause of death would leave unprotected medical malpractice victims who exercise reasonable diligence in investigating the cause of death but cannot discover the malpractice resulting in death because the medical professional's conduct interferes with the survivor's investigation." Concurring and Dissenting Opinion at 7 (Mundy, J.).